The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit Oyez! Oyez! Oyez! All persons having any manner or form of business before the Honorable of the United States Court of Appeals for the Fourth Circuit are admonished to draw nigh and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. Be seated please. Alright, the first case we'll call this morning is Spivey v. Breckon and Ms. Graham we'll hear from you. Good morning and may it please the Court, Wing Muscatine Graham on behalf of Appellant Mandriez Spivey. This appeal concerns the narrow question whether Mr. Spivey has a bivens cause of action for his claims that defendants failed to provide any medical, mental health, or dental treatment to him for nearly a year. These are textbook Eighth Amendment medical care claims and he has a cause of action for each of them. Though the Supreme Court has instructed lower courts not to extend bivens, it has also made clear in case after case that bivens claims remain available in previously recognized contexts, including Eighth Amendment medical care claims. That might even be overstating it. They've said, for instance, if we had bivens today, it probably wouldn't be the law. And the underlying pressure that the Court feels is that it doesn't feel like the third branch is in the position to create causes of action under the Constitution. And so it's a very, they've been pretty strict on that. That's true, Your Honor, though they've also said in Ziegler, again in Hernandez, and again in Egbert, that the three previously recognized contexts still remain available, even if the Well, I know what they said, yeah. And Mr. Spivey's claims fall squarely within Carlson. So for this Court to come to the conclusion that he doesn't have a cause of action under Carlson would contravene Supreme Court precedent Carlson's medical claims seem to be much more serious than the ones in this case. Respectfully, Your Honor, the seriousness of the medical care claims shouldn't bear on the first step of the bivens analysis, and that's because they don't implicate the kinds of considerations that the Court has instructed lower courts to consider at the first step, namely factors that bear on the separation of powers and judicial intrusion into the operation of other branches. And this Court's decision in Hicks makes that clear. So Hicks was a Fourth Amendment case. Right in green they talked about the basis for the cause of action being a survivorship claim. And they spent a lot of time talking about where the survivorship claim would come from, what it would look like. And of course there was a death there for a lack of medical care. And we don't have a survivorship claim here. We have a claim of delayed medical care. I mean, the tooth was treated. It was late. He was put on a list. And the bleeding, apparently, they took a test and didn't find anything. And the tooth that broke, he pulled out the rest of it and didn't complain. And to complain about anything further, there was no treatment necessary on that. So none of that was life-threatening, and we weren't looking at a survivorship action. But the Court used the word survivorship action and rested the whole claim on that issue. I think that's fairly different context, isn't it? Respectfully, Your Honor, I disagree. So every time the Supreme Court has characterized Carlson in the years since, it's referred to it as an Eighth Amendment medical care claim challenging deliberate indifference to serious medical needs. That's how this Court understood the Carlson context in its own case in Masias, where the plaintiff suffered from an ankle injury, a hernia issue, a nasal infection that he claimed needed surgery. Those were similarly very different contexts than the claim in Carlson. And still this Court came to the conclusion that the plaintiff in Masias had a cause of action under Carlson. And the same is true for Hicks, where it's a Fourth Amendment claim, but nevertheless this Court found that all those park police who did the search, conducted the search and they were traffic stops rather than a home arrest, as in Bivens, still the Court found that the plaintiff in Hicks had a cause of action. So for the Court now to conclude that just because the kinds of claims that Mr. Carlson brought differed in some ways from the claims in Carlson, that would be inconsistent with Hicks. It would be inconsistent with this Court's decision in Masias as well. And I'll add that the Supreme Court has repeatedly said that it's characterized Carlson as Eighth Amendment medical care claims. So it, you know, and each time... Well, that's a handle to refer to Carlson, but they've also explained that Eighth Amendment claim is just too broad. There are lots of different types of Eighth Amendment claims. I don't think you can get a lot of comfort from that. Well, Your Honor, the Court has given lower courts ways to distinguish claims from Carlson if they involve, for example, the factors that the Court laid out in Ziegler. So rank of officers, judicial, kind of judicial guidance that's given to prison officials and medical care providers. But those are not the kinds of factors we have at issue here. So while there are ways to distinguish Carlson claims, none of those factors are present in this case. For example, the kinds of officers in this case are of the same rank as those in Carlson. The right at issue, of course, is the same. The generality and specificity of the claims are the same. Mr. Carlson is challenging prison officials' failure to provide him with specific kinds of medical care rather than challenging major policies or systemic prison actions. The judicial guidance is the same. The courts have been very clear that prison officials must provide a minimum level of care. They can't be deliberately indifferent. So all of these factors that Ziegler has laid out would counsel in favor of recognizing a cause of action here. And again, that's exactly the same as this Court has already done in Hicks. And the excessive force claim, you agree, is covered by the Court's recent Goldie opinion. We don't need to cover that. That's right, Your Honor, yes. We concede. We concede that. I'll add, Your Honor, that in Ziegler, the Supreme Court made very clear that although, to your point earlier, that the Court has said that Bivens wouldn't necessarily come out the same way today, it said that it must be understood that the opinion in Ziegler is not intended to cast doubt on the continued force or even the necessity of Bivens. It was, of course, talking about the Surgeon Caesar context, but the same, I think, is true in the medical care context. And for this Court to come to the conclusion that there's no Carlson claim available here would effectively preclude all Carlson claims, which, again, would be inconsistent with the Supreme Court's instruction time and again to recognize Carlson claims. I think there's no way to square that holding with the Supreme Court's instruction again and again. And several of this Court's sister circuits have come to the same conclusion. So the Ninth Circuit in Watanabe and Schwartz have explained why medical care claims may continue to proceed under Carlson, even when they're not claims involving a death. The Seventh Circuit in Brooks and Watkins has made the same case. And this case just falls squarely in that context. So although the severity of the claim is slightly different, it doesn't implicate any of the factors that the Ziegler Court laid out or any other reason to be cautious on the first step of Bivens. Again, we're not talking about the second step. We're just talking about the first step. If there are no further questions, I'll... All right. Thank you. Thank you.  Good morning. Laura Taylor on behalf of the United States. May it please the Court. If I understand my opposing counsel correctly, they have conceded counts one through four and count nine as being governed by Goldie. That leaves only the medical care claims in counts five through eight. And Goldie has indeed winnowed those claims as well, because the reasoning in Goldie would require this Court to find that if the counts present a new context, then there are special factors that counsel hesitation, and all of counts five through eight would fail at step two of the Ziegler test. And so that means that the only remaining question for this appeal is indeed whether counts five through eight present an old context, such that they may proceed under Carlson, or whether they are meaningfully different from Carlson, and thus present a new context and are prohibited. I will focus the majority of my argument on that point. I will note, however, that the government has also argued as an alternative argument that in the event the Court were to recognize counts five through eight as viable implied causes of action, that the defendants have asserted a qualified immunity defense that this Court could and should resolve at this stage as well. Whether counts five through eight present a meaningfully ‑‑ The district court didn't reach qualified immunity, did it? It did not, Your Honor. Yes. An alternative would be to remand for that consideration in the first instance, but because this Court can affirm on any basis in the record, and the defendants have moved based on the pleadings that the complaint cannot overcome qualified immunity based on the allegations, then under this Court's precedent, it would be proper for this Court to rule on that ground in the first instance as well. Whether the medical care claims are meaningfully different from Carlson turns on whether or not there is any minor difference to say that they present a new context. The Supreme Court has made clear that significant parallels are simply not enough. And a difference can be meaningful whenever there is a factual distinction or a legal issue that might alter the policy balance that had implied the damages remedy in the first place. Now, admittedly, the Supreme Court has not provided a lot of guidance on how to quantify or qualify meaningful differences, but the Ziegler factors do give this Court guidance. The first factor is the generality or the specificity of the official action. The second factor is the extent of judicial guidance. The third is the statutory obligations under which the BOP officers were operating. And the fourth, and most importantly, is the risk of disruptive intrusion by the judiciary into the functioning of the BOP prison system. Now, of course, Carlson allowed for some intrusion by the judiciary into BOP's prison functions. But the question for this Court today is based on the allegations that Spivey makes, whether his claims threatened to intrude in ways that Carlson did not contemplate. And it is the government's position that is exactly what Spivey's claims do. They threatened to intrude on the functions of the BOP health care system in ways that Carlson did not contemplate. And because this Court would have to re-weigh the cost-benefit analysis. Somehow the medical care they need will intrude upon their administrative matters? Someone is bleeding out, and to give the proper treatment to that person would somehow upend their administrative duties and policies? How so? Respectfully, Your Honor, this case does not present that question. There was Mr. Spivey was not bleeding out. But to answer your question, I think in the spirit with which you are asking. It's a hypothetical, obviously. Sure. The government recognizes that there is some sensitive line drawing around where differences could be meaningful. But in Carlson, you had acute acts of individual malfeasance. The defendants in that case administered contraindicated drugs in a life-threatening situation, and then knowingly used broken equipment, which further escalated the death. Those are very specific acts for which the risk of a disruptive intrusion into the BOP health care system by the judiciary is low. Because under no circumstances would those activities be acceptable. But here, the questions that are presented target much broader level issues, much more systemic issues at BOP. For example, the mental health care request implicates programming considerations. Mr. Spivey states that he wanted to have a pre-release psychology class. That questions whether or not programs should be offered within the prisons. Who should qualify for those programs. What type of application process to get admitted to those programs is acceptable. And whether or not mental health care programs for pre-release or at the time of pre-release are even a necessary constitutional obligation. All of those considerations are much more akin to the administrative questions that were presented in Bulger and Nelson than they are to the acute acts of individual malfeasance in Carlson. Moreover, Mr. Spivey's claims simply don't implicate the type of judicial second-guessing that was appropriate in Carlson. In this case, for example. There's something I alluded to in my first questioning. The court said, what kind of cause of action are we going to have? And they said there was an argument as to whether to use federal law or state law of survivorship. And the court said, whatever difference we might have in resolving the question where the federal involvement is less clear, we hold that only uniform federal rule of survivorship will suffice to readjust the constitutional deprivation here alleged and to protect against repetition of such conduct. And it then adopts a reasoning in the lower court which basically creates a survivorship cause of action. That is entirely distinct from the nature of the claim here, which is not a survivorship claim. This is a claim for delay in providing medical care. Yes, Your Honor. We agree with that. For the most part, Mr. Spivey's claims allege delay in providing medical care. Some of his claims also allege that BOP should have different policies and procedures regarding on-site providers or on-site programming. And those two different types of claims are not exactly similarly situated, but they certainly are both different than a survivorship claim, as Your Honor identifies. And in that sense, all of Mr. Spivey's claims are nowhere close to the same context as Carlson. Focusing on the Ziegler factors and, most importantly, the generality or specificity of the action and the commensurate level of intrusion that would take place into the BOP health care system, to Your Honor's point, Carlson had a tragic, life-threatening situation that resulted in death, and that's why there's a survivorship claim. But it wasn't just delayed medical treatment that resulted in the death in that case. It was very specific acts of malfeasance that were done by individuals, including contraindicated actions. In Mr. Spivey's case, the complaint is at a very general level. His allegations are not specific, nor does he allege specific misconduct that amounts to individual acts of malfeasance by any single BOP employee. For example, taking issue with the warden's decision not to have an on-site dentist is nowhere near the same as providing a contraindicated drug to a dying inmate. And so for all of those reasons, and because any minor difference provides for a new context, the government would ask that this court heed the Supreme Court's warning and find that Mr. Spivey's claims do indeed present new context, and the special factors preclude an implied remedy here under the reasoning of Goldie. So are you saying that none of his claims involve acute care issues and neglect? None of them? Not as they are pledged, Your Honor. In fact, in all of the medical care claims that Mr. Spivey pleads, he never once alleges that his condition worsened, that he received a subsequent diagnosis, that he eventually needed medical care, such as surgery or life-saving equipment of any kind. In all of his claims, his conditions improved or went away. He doesn't allege otherwise. And essentially, Mr. Spivey alleges, I had some level of pain, I communicated that to BOP, I'm dissatisfied with the response I got, but then nothing ultimately came of it. And of course, the heartland of a deliberate indifference claim under the Eighth Amendment, if it were to proceed to trial, is that the plaintiff has to prove that he had a serious medical condition and the defendant knew about it and also knew of an excessive risk that was posed by the alleged inaction. Here it is hard to imagine how any excessive risk could have been posed by the alleged inaction when Mr. Spivey himself does not allege that any risk materialized. This is simply not the case, thankfully, of a tragic outcome, and thus it is a very differently situated case than the facts and circumstances of Carlson. So you're not saying you have to die in order to have a ñ it's not a new context? No, Your Honor. I don't think the government's position is that there has to be a death in order for ñ  It seemed to me, under Carlson, the court created a new cause of action under the Constitution recognizing it, and the new cause of action it created was survivorship action, and it spent a couple of pages discussing that. Is that your response to just incorporate that? Yes, Your Honor, and I hear you, Your Honor. I don't know that I'm authorized to state whether or not DOJ thinks the fact that it is a survivorship action alone is sufficient to create a new context. I recognize that it is indeed a very differently situated procedural posture and may well constitute a new context. I don't know that I have the authority to say that alone is dispositive. However, to your point, Judge Gregory, about whether or not a death is required, the key focus there is that in Carlson you had such specific contraindicated actions by the BOP employees that caused the death, and it is the government's position ñ We don't need to answer that question to decide this case. That's correct, Your Honor. Which I did ask it, so you do need to answer it. I'm happy to answer it. I can imagine a scenario perhaps where life-saving measures are successful in the last instance, and there may still therefore be an argument that there was deliberate indifference up until the last possible moment where CPR may have been successful, for example. Perhaps that's a difficult question that should be answered on a different day, but I'm certainly not going to tell you, Your Honor, sitting here today, that that's absolutely foreclosed under the current Bivens framework. But we are nowhere near that line today. The government recognizes, of course, that there is sensitive line drawing in this question, but thankfully the line that has to be drawn today is not quite so thin. It's not nearly so nuanced because Mr. Spivey's allegations are so indeed generic, and the level of intrusion the judiciary would have into BOP's health care system if it makes this type of mind-run Eighth Amendment claim actionable would be so significant. And so because you would have to re-weigh those policy considerations, and even if you ultimately weighed them differently, it doesn't matter the fact that you would have to re-weigh them means that under Supreme Court precedent, you cannot recognize a new context. And therefore, Mr. Spivey's claims should have been and properly were dismissed by the district court. Okay. Thank you. Thank you. Ms. Graham. Your Honors, I'd like to push back on a couple of the comments that counsel on the other side made. So the first thing is that I think it's a bit of red herring that Mr. Spivey's claims here challenge policy considerations. With respect to the dental care point, he explicitly said at pages 30 and 31 of the joint appendix that he's challenging the defendant's failure to provide him any dental care whatsoever, although he mentions that the defendants responded to his requests by noting that there was no dental staff on site. He explicitly says that they didn't provide him with any treatment, and he lists several ways that they could have provided him with treatment, one of which is providing a dental staff member on site, but also by sending him off site, contracting with dentists, et cetera. In terms of the question of the severity of his claims, severity is a question that gets to the merits of his claims potentially, and there are many ways for a plaintiff alleging deliberate indifference to medical needs to lose on the merits. It's just not relevant to the first step of the Bivens analysis. Although Carlson was a survivorship claim, the court has, to my knowledge, not focused on that ever in discussing Carlson in the years since. That's to say that there have been many Carlson claims brought pre-Ziegler, pre-Egbert, and post both of those cases. And to my knowledge, survivorship has never been highlighted. And so I think it would be wrong at this point to characterize a Carlson claim for the purpose of Bivens first step as just the survivorship claim. And I'll respond as well to counsel's comment that recognizing Carlson cause of action in this case would open the door to many more Carlson claims. Carlson claims have been recognized for over 40 years. There's never been such an issue. And, you know, these courts deal with many, many more 1983 medical care claims. In the Bivens context, there are many fewer, just by virtue of there being many fewer folks in federal prison. So I don't think that should animate the court's decision here. And I'll just add that Mr. Spivey's claims, again, the survivorship claims, I think, get to the merits. But I'll note that while he didn't die, he did suffer from severe pain, including severe dental pain, which this court has recognized to be serious. And several sister circuits have repeatedly recognized severe dental pain to be a serious condition. The Eighth Amendment is grounded in part in preventing the unnecessary infliction of pain. So the fact that he endured nearly a year of no dental care, you know, he was diagnosed with some of his dental conditions prior to his incarceration at USP Lee. He was there for nearly a year, didn't once receive treatment. His conditions were so bad that his tooth fell out. That is, you know, I think a very serious allegation. And he also alerted defendants about his severe dental issues and also some of the severe pain that he was experiencing from his other conditions. So, again, those questions, I think, do get to the merits. But I would point out that he did make out claims that he was in serious condition. And finally, to the question about the district courts reaching qualified immunity, the district court didn't reach qualified immunity, as you noted. And that is a question that we think the district court should touch in the first instance. So all we're asking here is for this court to recognize that Mr. Spivey has a cause of action under Carlson and send the case back to the district court to deal with qualified immunity and the merits in the first instance. Thank you. Thank you, Ms. Grant. We'll come down and greet counsel. Please proceed to the next case.
judges: Paul V. Niemeyer, Roger L. Gregory, G. Steven Agee